1  Dean G. Rallis Jr. (SBN 94266)
   drallis@afrct.com
2  Leigh O. Curran (SBN 173322)
   lcurran@afrct.com
3  ANGLIN FLEWELLING RASMUSSEN
   CAMPBELL & TRYTTEN, LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Tel: (626) 535-1900 | Fax: (626) 577-7764

6  Proposed Attorneys for Background Images,
   Inc.

7

8              **UNITED STATES BANKRUPTCY COURT**

9      **CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION**

10

11 In re                          Case No.: 2:15-bk-25957-BB
                                  Honorable Sheri Bluebond
12 BACKGROUND IMAGES, INC.,
                                  Chapter 11
13
                                  **EMERGENCY MOTION OF DEBTOR
14                                AND DEBTOR IN POSSESSION FOR
                                  AN ORDER:**
15
                                  **(1) AUTHORIZING USE OF CASH
16                                     COLLATERAL ON AN INTERIM
                                       BASIS;**
17                                **(2) GRANTING REPLACEMENT LIENS;**
                                  **(3) SCHEDULING A FINAL HEARING
18                                     ON PERMANENT USE OF CASH
                                       COLLATERAL; AND**
19                                **(4) AFTER HEARING, AUTHORIZING
                  Debtor.             PERMANENT USE OF CASH
20                                     COLLATERAL**

21                                **MEMORANDUM OF POINTS AND
                                  AUTHORITIES**
22
                                  *[Declarations of Dan Ellis and Dean G.
23                                Rallis Jr. Filed Concurrently Herewith]*

24                                **Date:     October 22, 2015**
                                  **Time:     10:30 a.m.**
25                                **Place:    Courtroom 1475**
                                            **U.S. Bankruptcy Court**
26                                          **255 E. Temple Street, Suite**
                                            **1482 / Courtroom 1475**
27                                          **Los Angeles, CA 90012**

28

*(vertical left margin:)* ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    TO THE HONORABLE SHERI BLUEBOND, UNITED STATES BANKRUPTCY

2    JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; SECURED CREDITORS;

3    THE CREDITORS APPEARING ON THE LIST FILED IN ACCORDANCE WITH RULE

4    1007(D) OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE; AND PARTIES

5    REQUESTING SPECIAL NOTICE:

6        Background Images, Inc. ("BII"), the debtor and debtor in possession, respectfully

7    moves the Court for an emergency order:

8        1.    Authorizing BII to use cash or cash equivalents whenever acquired in

9    which BII's bankruptcy estate holds, and as to which BII's secured creditors purport to

10   have, a security interest, including the proceeds, products, offspring, rents or profits

11   thereof ("Cash Collateral") on an interim basis, pending a final hearing, in such amounts

12   as are necessary to enable BII to operate its business in such a way as to avoid

13   immediate and irreparable harm to the estate.

14       2.    Granting replacement liens to BII's secured creditors to the same extent,

15   validity, and priority as any lien they may have had pre-petition, and other adequate

16   protection as described herein;

17       3.    Scheduling and establishing deadlines regarding a final hearing on BII's

18   use of Cash Collateral on a permanent basis ("Final Hearing");

19       4.    Following the Final Hearing, permanently authorizing BII to use Cash

20   Collateral in the ordinary course of its business during this Chapter 11 case; and

21       5.    Granting such other and further relief as this Court deems just and proper

22   under the circumstances.

23       A copy of requested order is attached as **Exhibit 1.**

24       This motion is brought pursuant to 11 U.S.C. § 363(c)(2)(B) and (c)(3), Fed. R.

25   Bank. P. 4001(b), and LBR 4001-2 on the grounds that BII's immediate use of Cash

26   Collateral is (i) within BII's sound business judgment, (ii) in the best interest of the estate

27   and its creditors, (iii) critical to BII's business operations, and (iv) essential to BII's

28   successful reorganization in this Chapter 11 case.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1       This motion is based on the notice of motion, the attached memorandum of

2   points and authorities, the declarations of Dan Ellis and Dean G. Rallis Jr., the proposed

3   order attached hereto, the arguments of counsel, and other admissible evidence

4   properly brought before the Court at or before the hearing on this motion.

5       BII will give telephonic or facsimile notice of the date, time and location of the

6   emergency hearing on this motion to all parties holding or asserting a security interest in

7   Cash Collateral, to the Office of the United States Trustee, and to the creditors listed on

8   BII's list of 20 largest unsecured claims.  To the extent necessary, the Debtor requests

9   that pursuant to LBR 9075-1(a)(6), the Court permit service of this motion by overnight

10  delivery.

11

12  Dated:  October 16, 2015          Respectfully submitted,

13                        ANGLIN FLEWELLING RASMUSSEN

14                          CAMPBELL & TRYTTEN, LLP

15

16                      By: _____/s/ Dean G. Rallis Jr._____

17                          Dean G. Rallis Jr.

18                          Proposed Attorneys for Background
                        Images, Inc.

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

# TABLE OF CONTENTS

**Page**

UNITED STATES BANKRUPTCY COURT ................................................................. 1

CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION ........................... 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 5

1.    INTRODUCTION ................................................................................................. 5

2.    JURISDICTION AND SUMMARY OF RELIEF REQUESTED .............................. 5

3.    FACTUAL BACKGROUND. ................................................................................. 6

    A.    BII's Operations And The Events Necessitating Reorganization. ............... 6

    B.    BII's Secured Creditors And Their Interests In BII's Personal
          Property. ..................................................................................................... 7

        i.    Full Circle Has A Perfected Security Interest In BII's Cash
              And Non-Cash Collateral. .................................................................. 7

        ii.   Certain Secured Creditors Have Security Interests In Only
              Non-Cash Collateral. ......................................................................... 8

        iii.  VER Holds, At Best, An Unperfected Security Interest. .................... 8

4.    ARGUMENT ....................................................................................................... 9

    A.    BII Should Be Authorized to Use the Cash Collateral. ............................... 9

    B.    The Secured Creditors Will Be Adequately Protected. ............................. 11

        i.    Preservation Of BII's Going Concern Value Protects The
              Secured Creditors' Liens. ................................................................ 13

        ii.   The Secured Creditors Will Be Protected By The Proposed
              Replacement Lien Over The Cash Collateral. .................................. 14

5.    EMERGENCY RELIEF IS JUSTIFIED UNDER THE CIRCUMSTANCES .......... 14

6.    CONCLUSION .................................................................................................. 15

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

**Page(s)**

**Cases**

*In re Dynaco Corp.*,
    162 B.R. 389 (Bankr. D.N.H. 1993)................................................. 9, 10, 12

*In re George Ruggiere Chrysler-Plymouth, Inc.*,
    727 F.2d 1017 (11th Cir. 1984) ................................................. 13

*In re Immenhausen Corp.*,
    164 B.R. 347 (Bankr. M.D. Fla. 1994) ................................................. 12

*In re Karl A. Neise, Inc.*,
    16 B.R. 600 (Bankr. S.D. Fla. 1981)................................................. 12

*In re McCombs Props. VI, Ltd.*,
    88 B.R. 261 (Bankr. C.D. Cal. 1988) ................................................. 10, 11

*In re Mellor*,
    734 F.2d 1396 (9th Cir. 1984) ................................................. 10

*In re Newark Airport/Hotel Ltd. Partnership*,
    156 B.R. 444 (Bankr. D.N.J. 1993)................................................. 12

*In re O'Connor*,
    808 F.2d 1393 (10th Cir. 1987) ................................................. 10, 11

*In re Pine Lake Village Apt. Co.*,
    16 B.R. 750 (Bankr. S.D.N.Y. 1982)................................................. 11

*In re Pursuit Athletic Footwear, Inc.*,
    193 B.R. 713 (Bankr. D. Del. 1996)................................................. 12

*Robert Neier v. Clark Oil & Refining Corp. (In re Apex Oil Co.)*,
    85 B.R. 538 (Bankr. E.D. Mo. 1988)................................................. 10

*In re Stein*,
    19 B.R. 458 (Bankr. E.D. Pa. 1982) ................................................. 11

*In re Triplett*,
    87 B.R. 25 (Bankr. W.D. Tex. 1988)................................................. 11

*United Sav. Assn. v. Timbers of Inwood Forest Assocs.*,
    484 U.S. 365 (1988) ................................................. 10, 13

**Statutes**

11 U.S.C. § 102(1)................................................. 14

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

11 U.S.C. § 361 ................................................................................................. 10, 13

11 U.S.C. § 361(1) .................................................................................................. 10

11 U.S.C. § 361(2) ............................................................................................. 10, 13

11 U.S.C. § 363 ................................................................................................. 8, 9, 13

11 U.S.C. § 363(a) .................................................................................................... 9

11 U.S.C. § 363(c)(1) ............................................................................................. 8, 9

11 U.S.C § 363(c)(2) ............................................................................................. 9, 10

11 U.S.C. § 363(c)(2)(A) and (B) .............................................................................. 9

11 U.S.C. § 363(c)(2)(B) ........................................................................................... 14

11 U.S.C. §§ 363(c)(2)(B) and (c)(3) ......................................................................... 5

11 U.S.C. §363(c)(3) ................................................................................................. 14

11 U.S.C. §§ 1107 and 1108 ...................................................................................... 4

11 U.S.C. § 1107(a) .................................................................................................... 9

28 U.S.C. §§ 157 and 1334 ........................................................................................ 4

28 U.S.C. § 157(b)(2)(A), (M) and (O) ....................................................................... 5

28 U.S.C. §§ 1408 and 1409 ...................................................................................... 5

Cal. Com. Code §§ 9509(d), and 9509(d) ................................................................ 8

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

## MEMORANDUM OF POINTS AND AUTHORITIES

2

## 1.  INTRODUCTION

3

4

The debtor and debtor in possession, BII, is an equipment rental company that has served the entertainment industry since 2001.

5

6

7

As briefed below, without the ability to use Cash Collateral to pay its operating expenses, BII's reorganization efforts will be a non-starter.  It will be forced to shut its doors and lay off its 18 employees.  Its value as a going concern will plummet.

8

9

10

11

12

Authorizing BII to use Cash Collateral for the purposes described below is necessary to prevent irreparable harm and loss to the bankruptcy estate.  The requested order would provide protection to both secured and unsecured creditors by allowing BII to maintain and repair the equipment that it uses and rents out, to collect its accounts receivable, and to generate revenue.

13

14

15

16

To ensure that the value of the liens of its secured creditors are protected, BII requests that BII's secured creditors be granted post-petition replacement liens to the extent of BII's post-petition use of Cash Collateral against post-petition property, including proceeds thereof.

17

18

19

20

21

Accordingly, BII respectfully requests that the Court authorize BII, on an interim basis, pending a final hearing, to use Cash Collateral to operate its business.  BII also requests that its secured creditors be granted replacement liens.  Finally, BII requests that the Court schedule a Final Hearing on BII's use of Cash Collateral on a permanent basis and set a briefing schedule.

22

## 2.  JURISDICTION AND SUMMARY OF RELIEF REQUESTED

23

24

25

26

27

BII commenced this case by filing a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code on October 15, 2015.   BII continues to carry out its business operations and manage its financial affairs as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.  No trustee, examiner, or committee has been appointed in this case.

28

This Court has jurisdiction to consider this motion under 28 U.S.C. §§ 157 and

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and

2  (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3  By this motion, BII seeks authority to use Cash Collateral to pay its ordinary and

4  necessary operating expenses in order to continue its business operations for the

5  purpose of preserving the value of its assets, which will inure to the ultimate benefit of

6  the estate and its creditors.  The statutory predicates for the relief requested herein are

7  11 U.S.C. §§ 363(c)(2)(B) and (c)(3), under which BII seeks authority to use Cash

8  Collateral.

9  **3.   FACTUAL BACKGROUND.**

10  **A.   BII's Operations And The Events Necessitating Reorganization.**

11  BII is an 14-employee company that was founded in 2001.  Declaration of Dan

12  Ellis ("Ellis Dec."), ¶ 4.  Its current headquarters are a warehouse facility and office in

13  Valencia, California, and it also maintains a facility near Atlanta, Georgia.  *Id*., ¶ 4.

14  BII's core business is the rental of audio and visual equipment and related

15  services.  Ellis Dec., ¶ 5.  BII rents video display equipment (projection, LED, and

16  monitor-type displays) to film and television productions, concerts, outdoor stage

17  events, trade shows, and corporate presentations.  *Id*.

18  BII's clients are typically production companies.  BII has provided services and

19  equipment to television productions such as Wheel of Fortune, Jeopardy, 24, NCIS,

20  Deal or No Deal, The Moment of Truth, Bones, Access Hollywood, and America's

21  Funniest Home Videos, and America's Got Talent, the MTV Movie Awards, and the

22  MTV Video Music Awards.  Ellis Dec., ¶ 6.  BII has provided equipment and services to

23  film productions such as the last two Star Trek films, Interstellar, Transcendence,

24  Captain America and other Marvel movies.  *Id*., ¶ 7.

25  In its first nine years, BII grew its concert touring business.  BII has offered

26  portable camera packages, minimal to extreme video display packages, and labor for

27  acts such as Jay-Z, Rihanna, Eminem, 50cent, Neil Young, Kanye West, and Chicago.

28  *Id*., ¶ 8.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    The equipment that BII rents to its customers comes from various sources.

2    Some of the equipment is owned by BII.  Other pieces of equipment are rented from

3    equipment lessors and then are rented to BII's customers.  Ellis Dec., ¶ 9.  Full Throttle

4    Films dba Video Equipment Rental ("VER") is a company that, until earlier this year,

5    rented equipment to BII.  *Id.*, ¶ 10.

6    The circumstances leading to BII's bankruptcy stem primarily from VER's

7    acceleration of a debt obligation that BII owes under its rental agreement with VER.

8    Ellis Dec., ¶ 11.  VER commenced litigation against BII in state court, which has placed

9    an unexpected financial burdened on BII and has hindered BII from paying other

10    creditors on debts acquired during the routine course of business.  *Id.*, ¶¶ 11-17.

11    BII's business is sound, and its revenues have been steadily increasing.  This

12    year, its long-term rental projects have nearly doubled.  Ellis Dec., ¶¶ 18-20.

13    Reorganization will permit it to address the needs of VER and other creditors, while

14    allowing BII to service its growing client base.

**B.    BII's Secured Creditors And Their Interests In BII's Personal Property.**

**i.    Full Circle Has A Perfected Security Interest In BII's Cash And Non-Cash Collateral.**

18    BII became indebted to Full Circle pursuant to a Loan and Security Agreement

19    ("Full Circle Agreement") dated June 28, 2011 (as amended on February 28, 2013), a

20    promissory note dated February 28, 2013 in the original principal amount of

21    $1,300,000.00 ("Note A"), and a promissory note dated February 28, 2013 in the original

22    principal amount of $1,300,000.00 ("Note B").  Ellis Dec., ¶ 25.  Copies of the Full Circle

23    Agreement, Note A, and Note B are attached to the Ellis Declaration as Exhibits 1 and

24    2.  BII's obligation under the Full Circle Agreement is secured by BII's personal

25    property.  The UCC Financing Statement filed by Full Circle with the California

26    Secretary of State ("SOS") on June 28, 2011 (11-7275164084) is attached to the Rallis

27    Declaration as Exhibit A.

28    The current outstanding principal balance of Note A is approximately

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  $122,126,86 and the current outstanding principal balance of Note B is approximately

2  $446,464.89.  Ellis Dec., ¶ 25.

3  **ii.    Certain Secured Creditors Have Security Interests In Only Non-Cash**

4  **Collateral.**

5  **Blue Bridge Financial, LLC** filed a UCC Financing Statement with the SOS on

6  August 17, 2015.  Rallis Dec., Ex. E.  The statement purports to cover an item of

7  equipment ("Spyder X20 PRCSR").  *Id.* '

8  **Corporation Service Company** filed a UCC Financing Statement with the SOS

9  on behalf of an unnamed creditor on July 9, 2015.  Rallis Dec., Ex. I.  The statement

10  purports to cover certain equipment, personal property, and other assets described in

11  "Agreement #2160171," a copy of which is not attached.  *Id.*

12  **DeLage Landen Financial Services, Inc**. filed a UCC Financing Statement with

13  the SOS on November 13, 2012.  Rallis Dec., Ex. F.  DeLage claims a security interest

14  only against equipment leased or financed by BII pursuant to a contract with BII, which

15  is not attached.  *Id.*

16  **First Bank, Richmond, NA** filed a UCC Financing Statement with the SOS on

17  August 17, 2015.  Rallis Dec., Ex. G.  The statement purports to cover an item of

18  equipment (certain LCD panels).  *Id.*

19  **Navitas Lease Corp.** filed a UCC Financing Statement with the SOS on July 31,

20  2015.  Rallis Dec., Ex. H.  The statement purports to cover the items of equipment

21  identified (LCD panels identified by serial number).  *Id.*

22  **iii.    VER Holds, At Best, An Unperfected Security Interest.**

23  VER may assert that it is a secured creditor of BII.

24  BII and VER entered into a master equipment rental agreement in 2010, but they

25  did not enter into a security agreement at that time.  *See* Rallis Dec., Ex. J (VER's state

26  court complaint attaching a copy of rental agreement as Exhibit A).  The only mention of

27  a security agreement in the rental agreement is that no security interest was created.

28  *Id.*, § 23. Nevertheless, on March 25, 2010, VER filed a UCC Financing Statement with

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   the SOS (10-7226796212), which purported to cover "cash or non-cash proceeds,

2   products, rents and profits of any collateral," and "all income" of BII." Rallis Dec., Ex. B.

3          Even assuming VER's financing statement was based on a valid security

4   agreement (which it is not), VER terminated it on August 18, 2014 by filing an

5   amendment that stated: "TERMINATION: Effectiveness of the Financing Statement

6   identified above [10-7226796212] is terminated with respect to the security interest(s) of

7   Secured Party authorizing this Termination Statement." Rallis Dec., Ex. C. On March

8   31, 2015, VER filed a continuation statement, in an attempt to continue the already-

9   terminated Financing Statement. *Id.*, Ex. D. However, this effort was ineffective. *See*

10  Cal. Com. Code § 9509(d).[1]

11         In February 2014, BII executed a promissory note and security agreement in

12  favor of VER, in the principal amount of $2,841,501.69. *See* Rallis Dec., Ex. J (VER's

13  state court complaint attaching note and security agreement as Exhibit C).[2] VER has

14  not filed a UCC Financing Statement in connection with this security agreement.

15  Accordingly, VER is, at best, a secured creditor with an ***unperfected*** security interest.

16  **4.    ARGUMENT**

17  **A.    BII Should Be Authorized to Use the Cash Collateral.**

18         BII's use of property of the estate is governed by section 363 of the Bankruptcy

19  Code. Section 363(c)(1) provides in pertinent part:

20

21

22

23

24

---

[1]      Section 9509(d) provides: "Except as otherwise provided in Section 9510, upon
25  the filing of a termination statement with the filing office, the financing statement to
which the termination statement relates ceased to be effective." VER's UCC Financing
26  Statement "ceased to be effective" on August 18, 2014, and when VER filed a
continuation statement in May 2015, there was nothing to continue.
27
[2]      In the state court lawsuit, VER contended that $930,087.70 was owed under the
28  promissory note as of February 2014. *Id.*, Ex. J (VER's state court complaint, Exhibit D,
describing amounts allegedly owed by BII).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1
2
3
4
5
6
7

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

> If the business of the debtor is authorized to be operated under
>
> section . . . 1108 . . . of this title and unless the court orders
>
> otherwise, the trustee may enter into transactions, including the
>
> sale or lease of property of the estate, in the ordinary course of
>
> business, without notice or a hearing, and may use property of the
>
> estate in the ordinary course of business without notice or a
>
> hearing.

8    11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a

9    trustee with respect to property of the estate, including the right to use property of the

10    estate in compliance with section 363.  *See* 11 U.S.C. § 1107(a).

11    "Cash collateral" is defined as "cash, negotiable instruments, documents of title,

12    securities, deposit accounts or other cash equivalents in which the estate and any entity

13    other than the estate have an interest." 11 U.S.C. § 363(a).  Section 363(c)(2)

14    establishes a special requirement with respect to "cash collateral," providing that the

15    trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if

16    "each entity that has interest in such cash collateral consents; or . . . the court, after

17    notice and a hearing, authorizes such use, sale or lease."  *See* 11 U.S.C. § 363(c)(2)(A)

18    and (B).

19    Where a debtor is operating a business, it is extremely important that access to

20    cash collateral be allowed in order to facilitate the goal of reorganization, as "the

21    purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral

22    is necessary to operate a business."  *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr.

23    D.N.H. 1993) (*quoting In re Stein,* 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982)).

24    Here, BII submits that it would be in the best interest of the estate and its

25    creditors to continue to maintain its business operations because funding for the

26    reorganization will be obtained, in significant part, from ongoing business operations.

27    BII requires the use of cash to pay ordinary expenses associated with its

28    business operations, including, but not limited to, funding payroll and other employee-

1  related obligations, paying rent and maintaining its office and warehouse facilities,

2  repairing and maintaining equipment used in its rental business, and procuring goods

3  and services necessary for operating without interruption.  Ellis Dec., ¶ 21-24.

4      The income generated by BII through collection on its accounts receivable will

5  allow BII to fund its business operations and ultimately, its plan of reorganization.  *Id*.

6  However, none of this is possible without the use of cash collateral.  *Id*.

7  **B.    The Secured Creditors Will Be Adequately Protected.**

8      The Court may authorize BII to use a secured creditor's cash collateral if the

9  secured creditor is adequately protected.  11 U.S.C § 363(c)(2); *In re Mellor*, 734 F.2d

10 1396, 1400 (9th Cir. 1984); *see also In re O'Connor*, 808 F.2d 1393, 1398 (10th Cir.

11 1987); *In re McCombs Props. VI, Ltd.,* 88 B.R. 261, 265 (Bankr. C.D. Cal. 1988).  Under

12 *United Sav. Assn. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365 (1988) and

13 subsequent case law, the property interest that a debtor must adequately protect

14 pursuant to § 361(1) and (2) is only ***the value of the lien that secures the creditor's***

15 ***claim***.  *Id*. (emphasis added); *see also McCombs*, 88 B.R. at 266 (stating that section

16 506(a) "limit[s] the secured status of a creditor (i.e., the secured creditor's claim) to the

17 lesser of the [allowed amount of the] claim or the value of the collateral").  Similarly, in

18 *Robert Neier v. Clark Oil & Refining Corp. (In re Apex Oil Co.)*, 85 B.R. 538, 541 (Bankr.

19 E.D. Mo. 1988), the Bankruptcy Court, relying exclusively on *Timbers*, denied adequate

20 protection to a husband and wife holding over-secured claims because "[n]o evidence

21 was presented that the value of the [collateral] would diminish during the course of [the]

22 Chapter 11 proceeding."  *Id*.

23     In determining adequate protection, courts have stressed the importance of

24 promoting debtors' reorganization.  As the Tenth Circuit has stated:

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    In this case, Debtors, in the midst of a Chapter 11 proceeding, have

2    proposed to deal with cash collateral for the purpose of enhancing

3    the prospects of reorganization. This quest is the ultimate goal of

4    Chapter 11.  Hence, the Debtors' efforts are not only to be

5    encouraged, but also their efforts during the administration of the

6    proceeding are to be measured in light of that quest. Because the

7    ultimate benefit to be achieved by a successful reorganization

8    inures to all the creditors of the estate, a fair opportunity must be

9    given to the Debtors to achieve that end. Thus, while interests of

10    the secured creditor whose property rights are of concern to the

11    court, the interests of all other creditors also have bearing upon the

12    question of whether use of cash collateral shall be permitted during

13    the early stages of administration.

14    *In re O'Connor*, 808 F.2d at 1937.

15        The preservation of the value of a secured creditor's lien is sufficient to provide

16    adequate protection to a secured creditor when a debtor seeks to use cash collateral.

17    *In re Triplett*, 87 B.R. 25 (Bankr. W.D. Tex. 1988); *see also Stein v. U.S. Farmers Home*

18    *Admin. (In re Stein)*, 19 B.R. 458 (Bankr. E.D. Pa. 1982).  In *Stein*, the court found that,

19    as a general rule, a debtor may use cash collateral where such use would enhance or

20    preserve the value of the collateral, and allowed the debtor therein to use cash collateral

21    even though the secured party had no equity cushion for protection. *Id.*  The *Stein* court

22    determined that the use of cash collateral was necessary to the continued operations of

23    the debtor, and that the creditor's secured position could only be enhanced by the

24    continued operation of the debtor's business. *Id.* at 460.[3]

25

26    [3]    Similar positions have been taken by a number of other courts.  *See, e.g., In re*
27    *McCombs, supra* (determining that the debtor's use of cash collateral for needed
    repairs, renovations and operating expenses eliminated the risk of diminution of the
    creditor's interest in the cash collateral and that such use would more likely increase
28    cash collateral); *In re Pine Lake Village Apt. Co.*, 16 B.R. 750 (Bankr. S.D.N.Y. 1982)
    (debtors permitted to use cash collateral generated from rental income to enhance the

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

MEMORANDUM OF POINTS & AUTHORITIES
CASE NO.: 2:15-CV-25957-BB

1    Here, the only secured creditor with a perfected lien on all of BII's asset,

2    including Cash Collateral, is Full Circle.  The value of Full Circle's lien is approximately

3    $568,581.  Ellis Dec., ¶ 25.  To the extent VER has a security interest, it is unperfected.

4    BII has attached a 13-week budget ("Budget") to the Ellis Declaration (Ex. 1),

5    which sets forth data and projections for cash revenues, expenses, finance cash

6    expenditures, and net operating cash flow for August 31, 2015 through January 31,

7    2016.  The Budget contains the minimum expenses which BII must incur to maintain its

8    business operations at a level that will preserve and maximize the value of BII's assets.

9    Ellis Dec., ¶ 22.  No extraordinary expenses are included and the proposed

10    expenditures are necessary and proper.  *Id.*

11    The value of the secured creditors' liens will be protected in multiple ways.

12    **i.**    **Preservation Of BII's Going Concern Value Protects The Secured**

13    **Creditors' Liens.**

14    BII will use Cash Collateral to  preserve the "going concern" value of the

15    company, a value that is necessarily and substantially greater than the value which

16    would be realized from a liquidation, if BII were forced to immediately cease operations

17    and lay off all of its employees.  BII's continued business operations will serve to protect

18    the secured creditors because BII will continue to generate revenue with which to fund a

19    reorganization and repay all of its creditors.  BII will be able to maintain and keep in

20    good repair the value of the equipment and vehicles that it rents and uses in its

21    business operations.  It will also be able to collect accounts receivable.  Additionally, BII

22    will be able to develop new business and thereby increase its overall cash position.

23    Ellis Dec., ¶¶ 21, 23.

24

25    value of real property and secured creditor's claim); *In re Karl A. Neise, Inc.*, 16 B.R.

26    600, 602 (Bankr. S.D. Fla. 1981) (marginally secured creditor adequately protected by lien in post-petition property acquired by debtors and debtors were permitted to use

27    cash collateral "in the normal course of their business"); *In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713 (Bankr. D. Del. 1996); *In re Newark Airport/Hotel Ltd. Partnership,*

28    156 B.R. 444, 450 (Bankr. D.N.J. 1993); *In re Dynaco*, 162 B.R. at 394-95 (Bankr. D.N.H. 1993); *In re Immenhausen Corp.*, 164 B.R. 347, 352 (Bankr. M.D. Fla. 1994).

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    On the other hand, if it is not permitted to use Cash Collateral, BII would have to

2    immediately cease operating and terminate all its employees.  It would not be able to

3    continue in a Chapter 11 case.  BII's assets would have to be sold at fire-sale rates in a

4    Chapter 7 case, or secured creditors would take control of the assets and sell them in

5    order to satisfy their own claims—leaving a likely dearth of funds to satisfy the claims of

6    unsecured creditors.  In short, the estate and the unsecured creditors would suffer

7    irreparable harm.

8    Rather than forcing BII and its creditors into such a dire situation at this early

9    stage of the Bankruptcy Case, this Court should permit BII to use any Cash Collateral in

10    order to preserve the ability to reorganize in a way that benefits creditors the most.  *In re*

11    *George Ruggiere Chrysler-Plymouth, Inc.*, 727 F.2d 1017, 1019 (11th Cir. 1984)

12    ("Without the availability of cash to meet daily operating expenses such as rent, payroll,

13    utilities, etc. the congressional policy favoring rehabilitation over economic failure would

14    be frustrated.").

15    **ii.**    **The Secured Creditors Will Be Protected By The Proposed**

16    **Replacement Lien Over The Cash Collateral.**

17    Section 361 of Bankruptcy Code explicitly provides that "adequate protection

18    may be provided by . . . [a] replacement lien to the extent that such . . . use [of cash

19    collateral] results in a decrease in the value of such entity's interest in such property."

20    11 U.S.C. § 361(2); *see Timbers*, 484 U.S. at 370.

21    BII requests that, as further protection, the Court order that the secured creditors

22    shall have a post-petition replacement liens in the post-petition cash, rents, profits, and

23    proceeds therefrom, to the same extent, validity, and priority as any lien they may have

24    had pre-petition.

25    **5.    EMERGENCY RELIEF IS JUSTIFIED UNDER THE CIRCUMSTANCES**

26    When it enacted section 363 of the Bankruptcy Code, Congress specifically

27    recognized that it might be necessary to schedule hearings on an expedited basis for

28    requests for interim authorization to use cash collateral due to the exigencies of

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  individual cases. Section 363(c)(2)(B) authorizes the use, sale, or lease of cash

2  collateral "after notice and a hearing," and § 363(c)(3) provides, in pertinent part, that

3  "[a]ny hearing under paragraph (2)(B) . . . may be a preliminary hearing or may be

4  consolidated with a hearing under subsection (e) of this section, but shall be scheduled

5  in accordance with the needs of the Debtors [and] . . . . [t]he court shall act promptly on

6  any request for authorization under paragraph (2)(B) of this subsection." 11 U.S.C.

7  §363(c)(3); see also 11 U.S.C. § 102(1) (defining "after notice and a hearing" to mean

8  after such notice and such opportunity for a hearing as is appropriate in the particular

9  circumstances of a given case).

10  Here, should this Court not authorize BII to use Cash Collateral, BII's attempts to

11  reorganize will fail, and BII's secured and unsecured creditors will suffer.  In contrast,

12  BII's use of the Cash Collateral will ensure the timely payment of employee-related

13  obligations, thus maintaining employee morale and hedging against the loss of critical

14  personnel. Further, it will foster ongoing cooperation from suppliers, vendors, and

15  employees and ensure an orderly reorganization.

16  Authorizing BII to use Cash Collateral pending a final hearing will preserve the

17  value of BII's assets only if authorization is granted immediately and on shortened

18  notice.  If there is any interruption in BII's ability to pay their expenses (such as

19  employee-related obligations, utilities, and the like) BII's ability to reorganize and pay

20  future expenses during the pendency of the Bankruptcy Case will be significantly

21  impaired, to the serious harm and detriment of BII and secured creditors.

22  Given the immediate need for use of the Cash Collateral, emergency relief is

23  warranted.

24  **6.**    **CONCLUSION**

25  For the foregoing reasons, BII requests that the Court enter an order

26  (1) authorizing BII to use Cash Collateral on an interim basis, pending a final hearing, in

27  such amounts as are necessary to enable BII to operate its business in such a way as

28  to avoid immediate and irreparable harm to the estate; (2) granting replacement liens to

*ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP*

1  secured creditors and other adequate protection as described above; (3) scheduling

2  and establishing deadlines regarding a Final Hearing; (4) following the Final Hearing,

3  permanently authorizing BII to use Cash Collateral in the ordinary course of its business

4  during this Chapter 11 case; and (5) granting such other and further relief as this Court

5  deems just and proper under the circumstances.

6  Dated:  October 16, 2015                    Respectfully submitted,

7                                              ANGLIN FLEWELLING RASMUSSEN
                                                 CAMPBELL & TRYTTEN, LLP
8

9                                              By:  _____ /s/ Dean G. Rallis Jr. _____
                                                  Dean G. Rallis Jr.
10                                                Proposed Attorneys for Background
                                                  Images, Inc.
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

EXHIBIT 1.

Dean G. Rallis Jr. (SBN 94266)
    drallis@afrct.com
Leigh O. Curran (SBN 173322)
    lcurran@afrct.com
ANGLIN FLEWELLING RASMUSSEN
    CAMPBELL & TRYTTEN, LLP
199 South Los Robles Avenue, Suite 600
Pasadena, California 91101-2459
Tel: (626) 535-1900 | Fax: (626) 577-7764

Proposed Attorneys for Background Images,
Inc.

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re<br><br>BACKGROUND IMAGES, INC.,<br><br><br>Debtor. | Case No.: 2:15-bk-25957-BB<br><br>Honorable Sheri Bluebond<br><br>Chapter 11<br><br>**ORDER GRANTING EMERGENCY MOTION OF DEBTOR AND DEBTOR IN POSSESSION FOR AN ORDER:**<br><br>**(1) AUTHORIZING USE OF CASH COLLATERAL ON AN INTERIM BASIS;**<br>**(2) GRANTING REPLACEMENT LIENS;**<br>**(3) SCHEDULING A FINAL HEARING ON PERMANENT USE OF CASH COLLATERAL; AND**<br>**(4) AFTER HEARING, AUTHORIZING PERMANENT USE OF CASH COLLATERAL**<br><br><br>**Date:    October 22, 2015**<br>**Time:    10:00 a.m.**<br>**Place:   Courtroom 1475**<br>**            255 E. Temple Street**<br>**            Los Angeles, CA 90012** |

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1    On October 16, 2015 (the "Petition Date"), Background Images, Inc. ("BII") filed

2    its voluntary petition with this Court commencing this Chapter 11 Case.

3    On October 16, 2015, BII filed its Emergency Motion Of Debtor And Debtor In

4    Possession For An Order: (1) Authorizing Use Of Cash Collateral On An Interim Basis;

5    (2) Granting Replacement Liens; (3) Scheduling A Final Hearing On Permanent Use Of

6    Cash Collateral; and (4) After Hearing, Authorizing Permanent Use Of Cash Collateral

7    ("Cash Collateral Motion"), briefs (if any) filed in opposition thereto, and the arguments

8    of counsel.

9    In the motion, BII requested an order (1) authorizing BII to use cash or cash

10   equivalents whenever acquired in which BII's bankruptcy estate holds, and as to which

11   BII's secured creditors purport to have, a security interest, including the proceeds,

12   products, offspring, rents or profits thereof ("Cash Collateral") on an interim basis,

13   pending a final hearing, in such amounts as are necessary to enable BII to operate its

14   business in such a way as to avoid immediate and irreparable harm to the estate;

15   (2) granting replacement liens to BII's secured creditors to the same extent, validity, and

16   priority as any lien they may have had pre-petition, and other adequate protection as

17   described herein; (3) scheduling and establishing deadlines regarding a final hearing on

18   BII's use of Cash Collateral on a permanent basis ("Final Hearing"); (4) following the

19   Final Hearing, permanently authorizing BII to use Cash Collateral in the ordinary course

20   of its business during this Chapter 11 case; and (5) granting such other and further relief

21   as this Court deems just and proper under the circumstances.

22   Notice of the interim hearing on this Cash Collateral Motion ("Interim Hearing")

23   and the emergency relief requested in the motion has been provided by Debtor, whether

24   by facsimile, electronic mail, overnight courier or hand delivery, was given on October

25   16, 2015, to certain parties in interest, including: (a) the Office of the United States

26   Trustee for the Central District of California, Los Angeles Division, (b) the 20 largest

27   non-insider unsecured creditors of Debtor; (c) Full Circle Capital Corporation ("Full

28   Circle"); (d) Full Throttle Films, LLC dba Video Equipment ("VER"); and (d) all other

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

parties known by Debtor to assert liens or security interests in the assets of Debtor
(collectively, the "Noticed Parties").

Based on the evidence provided in support of the Cash Collateral Motion,
Debtor's estate will be immediately and irreparably harmed unless the relief sought by
this Interim Order.  Good cause appearing, therefore,

**IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The Cash Collateral Motion is granted;

2.    BII is authorized to use Cash Collateral on an interim basis, pending a
final hearing, in such amounts as are necessary to enable BII to operate its business in
such a way as to avoid immediate and irreparable harm to the estate.  BII is permitted to
Cash Collateral for any purpose consistent with (i) BII's general operational purposes,
(ii) to fund the expenses of BII's bankruptcy estate, all in accordance with the Budget
submitted in connection with the Cash Collateral Motion;

3.    As adequate protection for BII's use of Cash Collateral, Full Circle is
granted replacement liens, to the same extent, validity and priority of Full Circle's pre-
petition liens, in all post-petition assets of BII, other than avoiding power actions and
recoveries.  This grant is made subject to any court determination that Full Circle's pre-
petition liens are invalid or nonexistent (in which case the replacement liens will be
deemed eliminated);

4.    A final hearing on the Cash Collateral Motion shall be heard before this
Court on _____, 2015 at __ a.m./p.m. in Courtroom ____ of the United States
Bankruptcy Court, Central District of California, 21041 Burbank Boulevard, Woodland
Hills, CA 91367.

5.    Any objection to the final approval of the Cash Collateral Motion shall be
filed with the Court and served upon counsel for Debtor, with a courtesy copy of such
objection delivered to Court Chambers, so that such objection is received by Chambers
and counsel for BII no later than 5:00 p.m. (Pacific Time) on _____, 2015.
Any reply to any objection to the final approval of the Motion shall be filed with the Court

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

and served upon objecting parties, with a courtesy copy of such reply delivered to Court

Chambers, so that such reply is received by Chambers and the objecting parties no

later than 5:00 p.m. (Pacific Time) _____, 2015.

###

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP